So Mr. Mazurek, you have reserved two minutes for rebuttal, so that gives you eight minutes out of the gate. The floor is yours. Henry Mazurek Good morning, your honors, and may it please the court. My name is Henry Mazurek, and I have the privilege of representing the defendant, Appellant Herbert Fletcher. Your honor, this case comes before the court for a very, very important reason, which is that the procedure that was applied at sentencing for Mr. Fletcher did not live up to the standards of this court or the Constitution in due process. Your honor, there's been a legion of cases that have come before this court where there's been a failure to calculate the sentencing guidelines as an initial matter. This court has said in Caveira and in other cases that the most important aspect of sentencing now since the change from Booker, Fanfan, and Gall, and Kimbrough is for the court to establish at the very beginning the anchoring point of sentence, the initial benchmark of sentence. The district court said repeatedly, right, that the guidelines range is 57 to 71. The district court said, agreed with the defendant that the guidelines range is 57 to 71 months. I'm ruling in Mr. Fletcher's favor on this issue, and the guidelines are 57 to 71 months. Your honor, the judge, unfortunately, was in this proceeding all over the place. He had different positions at different stages in the sentencing hearing over the 84 pages, and while he may have agreed, at least, and that's what he said, with the party's plea agreement, which was for 57 to 71 months, he didn't independently establish what the guidelines were in this case. In fact, he started the whole proceeding at page A173 of the appendix with the indication that he was agreeing with the addition that was submitted by probation on the very morning of sentence, an addendum, which said that a five-level enhancement would apply for a pattern of unlawful sexual activity enhancement under 4B1.5B1. He said it appears that it does apply, and despite that, then he went on at the very beginning, the outset of the sentencing hearing, again on that same page, saying that he would, because the government's willingness to abide by a guideline calculation, he would be prepared to sentence the defendant within the range of the plea agreement, because otherwise we would have to have a revised pre-sentence report and bring the victim back to give a victim impact statement. So at the beginning, he says, I do find that a five-level pattern enhancement appears to apply. He then says, I'm going to follow, but I probably will be following, it appears that I will be following the plea agreement that the parties had agreed to. And then the point that Your Honor referred to in the transcript was right before the defendant spoke and gave his sentencing allocution. It wasn't during a colloquy with respect to what the final guidelines would be, and instead, at appendix page 240-241, when he issues a sentence of 96 months and then reduces it to 91, he refers to the agreement of the government at 57 to 71 months, when we know that the government at that point was arguing for 70 to 87 because of a disputed two-level enhancement under section 2G of the guidelines involving the undue influence of a minor. I am correct, am I not, that you did not object, you did not make the objection. Your Honor has failed to do the guidelines calculation? Your Honor, I will tell you, since I was standing up and handling the sentencing, I was as confused as I am today as to what the ultimate determination of the court was. That's fine, that's fine, but there's a very important role of objection, which is that it calls the district judge's attention to what the argued deficiency is and gives him notice that he should attend to that and make clear that he has analyzed the guidelines. And you did not, as far as I can see, you did not say, we object that you haven't analyzed the guidelines. Your Honor, I objected at the end of the sentencing to the guideline calculation that I thought that the court had imposed. That's different, that's different, that presupposes that the court has done a guidelines calculation that you disagree with. You didn't say you didn't calculate the guidelines, that's required, you've got to do it. Your Honor, I objected to, again, I objected to what I believed, I heard the guideline calculation to have been at the end of the colloquy with the court. I did generally object to the sentencing guidelines, which under the Second Circuit. But then the district court agreed with you, I said I'm agreeing with you that it's 57 to 71, right? To the extent there was any ambiguity at that point, it was clarified, wasn't it? Your Honor, no, at the appendix. Well, go ahead, sorry. At the appendix level, at the time that the actual, his sentence was imposed, and again, there was no calculation of the guidelines with respect to base offense level, adjustments that were being applied, criminal history category. None of that was ever done during the. There was a stipulation between the parties, right? And then. There was, but then. There was a discussion about whether the enhancements that were proposed by the probation would be accepted, and the district court said I'm not accepting them. You know, the two things that you argued for, the judge said, I'm agreeing with you. I'm ruling for you on the two things you're arguing on. Your Honor, while he appeared to agree with the party's plea agreement, and he said that several times, it did not appear from the sentencing proceeding that he was calculating the guidelines independently from what was in the party's agreement. And that is the problem here, because if, in fact. We have the plain error standard, right? I'm sorry? We have the plain error standard. Your Honor, I would argue that we don't have to. You don't have to apply the plain error standard, because under United States v. Casesi at 685 F. 3rd 186, the Second Circuit in 2012 said that a general objection to the district court's procedural deficiencies in sentencing is sufficient to satisfy a de novo review. But even if the court were to consider this to be a plain error situation under the decision in this case in Gonzalez-Reyes, which is a Second Circuit March 31st, 2022 case, plain error of review was applied in this very same set of circumstances where there was a determination where the court did not indicate with precision the calculation of the guidelines, and even though those guidelines overlapped, it was still remanded for resentencing. And to refer back to Judge Sullivan, your concern about Judge Quirman agreeing with the defense on the guideline calculation, again, when he imposed sentence at 240-241 of the appendix, he actually said that the guidelines that the government has agreed to is 57 to 71 months. And what that meant is that he was applying what the parties had agreed to in the plea agreement. But the reason why it is extremely important for the court to independently calculate the guidelines, because if, in fact, what Judge Quirman said at the outset of that sentencing hearing, when he said that he believes that the five-level pattern enhancement applied, and it's the reason why he asked the probation department to submit that addendum on the morning of the sentencing hearing, is because if we had a substantive argument as to whether that pattern enhancement applied, that's what we would be arguing here today. But that argument never had a chance, and Mr. Fletcher never had a chance to make that argument, because the court never calculated what the actual guidelines, independent of the parties' plea agreement, the court was imposing. And we believe that it is clear on this record. What's not clear on this record is what exactly the court thought. He had three different ranges that he applied at different stages at 57 to 71, 97 to 121, and then 121 to 151. In fact, it was so confused that the prosecutor had to ask for a clarifying question at the very end of the sentencing hearing, asking the court the very question about what guideline would have been applied or was applied at sentence. This confusion requires a remand because of the importance that procedural due process plays in sentencing, especially since the sentencing courts are given such discretion in terms of what a reasonable sentence is. But I'm just looking at 197 to the top of 198. Okay. I agree with the defendant that the guideline was 57 to 71 months. Right? Yes, Your Honor. And you didn't object to say I'm confused as to what the guideline was? No. Your Honor, again, that statement was made not in the context of calculating or talking about the guidelines. It was actually right after there was a disjointed colloquy about what the victim impact statement meant and right before the defendant's sentencing allocution. I'm not sure. I have, of course, in ruling in your favor on this issue, I'm saying that it's 57 to 71. That doesn't mean I'm bound by it. So he's clearly stating what he's saying the guidelines are. He has agreed in your favor on the enhancements proposed by probation, then says I'm not bound by it, and then, of course, he varies upward. But, Your Honor, then in various other places, including the beginning, he said that the five-level enhancement to the pre-sentence report appears to apply, which would increase the level to 121 to 151 months. That is at A172 of that same transcript. Right. But then he's made it very clear that he's not done that. I mean, it seems to me that you're saying that there's a discussion about whether an enhancement should apply. Probation has recommended a much higher enhancement, two enhancements that are going to almost double, probably double the guidelines range. And the judge rejects that. And he says on the record, I have found in your favor. But, Your Honor, it appeared, I know what the words say, throughout the sentencing proceeding, the court was trying to appease the parties or reach agreement or have agreement on the plea agreement. But with respect to what the court believed the guidelines were, his words and his actions were completely the opposite. What would the range have been with the five-point and two-point enhancements? 121 to 151 months. And what did he get, 180? He got, initially the court imposed 96 and then gave him five months credit for time that was spent in Columbia to 91 months. So at the low end, it would be close to 97 to 121. So if the court found in our favor on the argument of the undue influence, which was the 2G enhancement, that would be the low end of that guideline. And that is what I believe why the prosecutor asked the question she did at the end of the sentencing hearing about trying to figure out what the court was actually, how the court was actually calculating the guidelines. It was a very chaotic sentencing hearing, to say the least. There was not a clear calculation of the guidelines based upon what we know as the tried and true measure of saying the base offense level, which guideline section applies, and so forth. It never happened in this context. And while the court may have been trying to satisfy the parties with respect to the plea agreement, it has an independent obligation to have that anchoring point of what the guidelines were. I take it your point, which your time is over, but I take it your point is that the judge said, I'm not going to accept these, I'm not going to adopt these enhancements, but then gave a sentence, which was more reflective of the enhancements than it was the original sentencing guidelines, right? That is correct. And those enhancements were presented on the morning of sentencing, not in the original pre-sentence report. Oh, okay. But the judge made it very clear the guidelines are 57 to 71, I'm not bound by it, and then he explained in reference to the 3553A factors why he thought a 91, initially 96, sentence was appropriate. I believe that the procedure actually, at the time of sentencing, indicated more that the court was accepting 57 to 71 as what the parties included in their plea agreement as opposed to an independent calculation that the court was opting to. But that's just not consistent with what I've quoted to you. Your Honor, there was a lot of inconsistencies within that sentencing transcript, including what happened at the very beginning of the proceeding when he indicated that. What are you suggesting with regard to the district court judges? Please be careful about what you're doing. What are you suggesting? All I'm suggesting, Your Honor, is that the court in that proceeding did not come to an independent calculation. Well, you've reserved two minutes for rebuttal. Mr. Mazurk will now hear from Ms. Benick. Thank you. Am I saying that correctly? Yes. Thank you, Your Honor. May it please the court, my name is Rachel Benick. I represent the United States in this appeal, and I also represented the government at the district court in this case. First, I just want to respond to a statement that defense counsel made a couple of times in his opening argument, which is that the government sought clarification about what the guideline range was towards the end of sentencing. That's simply not what was happening. It was abundantly clear the guideline range that had been calculated. It was 57 to 71 months. The court stated that explicitly. The court stated explicitly that it was ruling in favor of the defendant and against the government. This was not an effort to satisfy the parties. The government argued throughout the sentencing that both the five-point and the two-point enhancements were appropriate and should have been applied, and the court disagreed with us. So what had happened at the end of the sentencing was the court had made reference to what the guidelines would have been had he applied the five-point enhancement. The government simply sought to clarify, to make sure the record was accurate, that had the five-point enhancement been applied without the two-point enhancement, it would have been a slightly lower range. However, at no point was the government suggesting that there was any confusion about the guidelines that the court had calculated, which again was against what the government had requested. What was the justification for the upward sentence in the assessment of the 3553 families? Sure. The court was very clear about the reasons for the upward variance. He talked about it at the sentencing hearing. It was the egregious nature of the defendant's conduct. We had presented to the court quite a lot of information about the numerous minor victims that the defendant had violated. We had also included in our sentencing submissions multiple quotations from thousands of pages of communications the defendant had had with his co-defendant that discussed minor girls in incredibly dehumanizing, degrading, and horrific language. The court read those, and in fact, in his statement of reasons and at sentencing, talked about the shocking vulgar language in which the defendant used to talk about his young victims. And there was a statement of reasons issued after sentencing where the court ticked off boxes explaining the reasons for the increased upward variance, and that was at Special Appendix 4 is where the statement of reasons starts. So the court was the egregious nature of the conduct, and the court also made reference to concerns about general deterrence. There was an individual who spoke at sentencing as an impact statement who worked with these victims in Colombia and spoke at length about the damage this type of conduct does to young girls in Colombia and the frequency with which wealthier American men travel to Colombia to take advantage of the extreme poverty and desperation of young girls there. And the court made mention of being moved by the concerns about general deterrence as well, which is an appropriate 3553 factor. So at its core, the reason we are here is because despite winning every legal argument in the sentencing court at sentencing, the defendant is simply unhappy with the outcome of the sentence. He did receive an above-guideline sentence. As I noted, it was because of the egregious nature of the conduct, which is an entirely appropriate reason for a district court to impose a sentence. I also want to note that while the government's position is that it was entirely clear at sentencing what the guideline was, there is more than that. After sentencing, the court also issued written statements indicating the guideline that he had found. So Your Honors noted at Appendix 198 and 199 where the court expressly said during sentencing that he was agreeing with the defendant and imposing a guideline to 57 to 71 months. In the statement of reasons, the court listed the guideline range as 57 to 71 months, indicated that he had imposed an above-guideline sentence, and explained the reasons for that. And that's at Special Appendix 4 to 6. And then if that wasn't clear enough, the court again reiterated his guideline calculation finding as 57 to 71 months in his post-sentencing order that was issued in response to the defendant's untimely objection to the communications between probation and the court. That's at Appendix 168, and the court wrote, quote, that the assistant United States attorney only advocated for a top-of-the-guideline sentence, parenthetical, which refers to the 57 to 71-month range. So not only was the guideline range calculated and stated three times at the sentencing hearing, it was also stated in writing twice following the hearing. So the government's position is there simply was no ambiguity, either during the hearing or after the hearing, about what the guideline was. There was discussion about other potential guidelines. Not only was that appropriate, it was absolutely necessary. There were two disputes about what types of enhancements should have been applied. The government believed the two-point and the five-point enhancements should have been applied. There was an argument on that. It was a full statement. Even though it wasn't in the plea agreement? Yes, Your Honor. The government's position, our plea agreements include language that makes clear that there may be errors in the calculation. Our job is to inform the court of what we think the appropriate calculation is. But it wasn't new information, right? No, Your Honor. And so that's the reason why in the transcript you'll see the government indicate, we believe the appropriate calculation is the highest one with those enhancements. However, we were not arguing for a sentence in the 121 to 151 range because we felt that we had made representations in the agreement that would, that made us feel that it was more appropriate for us to recommend a lower range. Well, I guess the question is why did you miss it in your plea agreement? Human error. And, you know, we did the plea quite quickly right before trial. It was a mistake. It was overlooked. But the government does believe that probation was correct and we were incorrect in our calculations. If the court has any other questions about the guidelines, I'm happy to address them. Otherwise, I can address briefly the question of the communication of probation. On the standard of review, counsel argued that he cited the Casese case for the proposition that all the defendant needs to do is make a general objection of a procedural error without having to specify what the error was. Yes. What would you say about that? The government disagrees with that. The Casese case was a fairly unique situation. In fact, the court described the issue as an almost metaphysical issue. In United States v. Villafuerte, which is 502F3204, it's a Second Circuit case from 2007, the court states, quote, we have declined to overlook a lack of objection where the sentencing issue is not particularly novel or complex. That case deals with a failure to object to the court's alleged failure to consider the 3553 factors. A failure to calculate the guidelines is not a novel or complex issue. I think that falls far more comfortably in the sphere of Villafuerte. It's a very clear, very easy objection to make. It would have been very simple for the court to clarify his position to the extent there was ambiguity had the objection been raised. And I think the Casese case is dealing with a different type of issue. I can address very briefly the second point, unless your honors have any further questions on the guidelines. The second issue raised is whether the district court relied on any factual information that was not known to the parties in determining the appropriate sentence. He did not. That is abundantly clear from the post-sentencing order that was issued by the district. Which, again, this is plain error, isn't it? There was no objection to consulting with the probation officer. Absolutely, your honor. Yes, there was no objection on the record. It left the court, and the court noted in the post-sentencing order that the untimely objection left him unable to address the issue in real time, where he could have put on the record those communications live or asked the probation officer to communicate with him on the record. However, in responding to the untimely objection, the court did clarify and said, quote, to avoid any doubt, I address the issue now. I relied only on the facts in the PSR, PSR addendum, the parties' submissions, and the arguments and statements made in open court. He then reiterated that he sentenced the defendant to a term in custody above the guidelines range because of the, quote, defendant's egregious conduct. The defendant is essentially asking this court to disregard or disbelieve the assertions made by the district court in that post-sentencing order, and there is simply no basis to do that. Absent questions, I think that's all I have, but I'm happy to answer anything the court would like. All right, thank you very much. Thank you, your honor. We'll now hear from Mr. Mazurk for two minutes of rebuttal. Very briefly, thank you, your honor. I would just like to address again the issue of what was known by the parties at the time of the hearing with respect to the guidelines calculations, and I refer the court to appendix page 172 where the district court opened the sentencing hearing by saying he has reviewed the addendum which had been presented by the probation officer the morning of sentencing on May 31, 2023, which included two additional enhancements, the plus two for the undue influence and the plus five for the pattern activity. At the time before sentencing, the pre-sentence report indicated a total offense level of 25, which was under the parties' plea agreement, 57 to 71 months. At the time of sentencing, we now have an addendum which indicates a 121 to 151 guideline range, quite different. And the court said at the outset of the sentencing hearing on page 172, this enhancement, meaning the pattern enhancement, applied to his codefendant and appears to apply to this defendant. As a result, the defendant's guidelines calculation is increased by five levels, resulting in a guideline and range of 121 to 151 months. But he's summarizing what would be the consequence of adopting the probation department's recommendation, right? And he used the word appears to. He indicated very clearly that what the addendum that was presented to him on that morning was more accurate than what was in the probation report that the parties had. In other places in the hearing throughout, when we referred to the- You're right. I mean, you conveniently stopped at the bottom 172. The next sentence reads over on 173, nevertheless, the government is advocating for a sentence within the guidelines range that's principally calculated, 70 to 81. And based on the government's willingness to abide by the calculated range, I would be prepared to sentence the defendant within the range, and particularly since otherwise, we would have to be a revised pre-sentence report. We'd have to bring the victim or victims back, give victim inspection. He's kind of working his way through where he's going to land. Well, that 70 to 87 range wasn't even in the parties' plea agreement. It's another range. If you thought it wasn't, then you should have objected because the objection would have clarified the problem for us, but we're left with an ambiguity here. How are we to understand what this record does or doesn't do? And I can well appreciate it was a long time ago when I was on that side, but I do remember the difficulties that people have. But without it, it doesn't clarify the issue. Your Honor, I have to object. I don't understand. Are you adopting the 57 to 71 or whatever it was, or are you adopting the enhancements? I mean, at that point in time, that is crystallized for you. Your Honor, I did the best I could in terms of— I understand that. In page 251 of the transcript, at the conclusion, I wanted to make sure my record was as clear as I could at that time, understanding all of the back and forth. You say you did the best you could, but saying I object to the failure to specify what is the guideline range, that's not hard to do. Well, Your Honor, I did use maybe— You were arguing about a lot of things. I did use some words that I believed communicated that. On lines 8 through 13 of page 251, I said at the conclusion, I just want the record to be clear about our continuing objections to those guidelines calculations, which were the court's guidelines calculations. Objection to the court's guidelines calculations is a very different thing from objection to the court's failure to specify what are the guidelines calculations. I believe that the court was imposing guidelines that were not consistent with what he was saying during the course of the hearing. We couldn't rely on the probation report. He said multiple times during the hearing that the probation report was totally inaccurate, that it was a mess, that you wouldn't be able to conclude anything from the probation report. So because we were given information late, and maybe we should have adjourned the sentence at that point in time, however, there was a lot of pressure being put on the parties because there was an out-of-country victim who had to make a victim impact statement. Your Honor, I believe that what is most important is that the defendant has the opportunity to know exactly what the guidelines are as the anchoring point. I believe the anchoring point was what the court said at the outset of the hearing, and while he wanted to give some credence to the parties' plea agreement, at the end of the day, he's sentenced according to the 97 to 121 month range, which included the five pattern enhancement, which he began the proceeding with. I appreciate your time. Thank you. Thank you, Mr. Missouri. Thank you, Ms. Bennett. We will reserve decision.